[Cite as *State v. Petti*, **2012-Ohio-2761**.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97131**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MITCHEL PETTI

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-535936

**BEFORE:** Rocco, J., Stewart, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** June 21, 2012

-i-

**ATTORNEYS FOR APPELLANT**

Michael V. Heffernan
75 Public Square
Suite 700
Cleveland, Ohio 44113

Henry J. Hilow
McGinty, Hilow & Spellacy Co., LPA
614 W. Superior Avenue
Suite 1300
Cleveland, Ohio   44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:    Michael E. Jackson
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

KENNETH A. ROCCO, J.:

{¶1} Defendant-appellant Mitchel Petti appeals from his convictions after a bench trial on charges of engaging in a pattern of corrupt activity, conspiracy, money laundering, theft, securing writings by deception, receiving stolen property, and tampering with records.

{¶2} Petti presents two assignments of error, in which he argues that his convictions are not supported by either sufficient evidence or the manifest weight of the evidence. Upon a review of the record, this court finds his arguments unpersuasive. Consequently, his convictions are affirmed.

{¶3} In April 2010, Petti and his brother Mark were charged with 14 other defendants in a multi-count indictment alleging mortgage fraud. Petti and his brother owned a title company named Titles, Etc., Inc. ("Titles"). The indictment alleged Petti engaged with his codefendants in a series of fraudulent mortgage schemes designed to obtain control over home loan proceeds and then distribute those illegally obtained proceeds to himself and the others participating in the enterprise. According to the state's witnesses, the scheme unfolded in the following manner.

{¶4} Fred Loewinger owned a mortgage company named Fast Mortgage Services, Inc. He acted as a loan officer and prepared loan applications, supplying the information upon which the lending institution relied to provide a home loan to the buyer. Loewinger often used Petti's company to do the title work associated with the loan.

**{¶5}** In 2003, Loewinger began the scheme to obtain more money from the lender than properties were worth. He would engage "straw" buyers and use them to purchase distressed properties at a low cost. Loewinger created a purchase agreement for the seller that indicated the low actual purchase price. Once the seller had signed the first agreement, Loewinger created a "double" purchase agreement for the buyer. The "double" indicated that the property had been purchased at a much higher amount and indicated that the buyer supplied the appropriate down payment. Loewinger provided all the documents related to the purchase to Petti's employee and escrow officer Donna Sherman, because, in accordance with industry procedures, Titles acted as Loewinger's escrow agent for the deals.

**{¶6}** Sherman created a file for each of Loewinger's "double" deals that contained two sets of documents, i.e., one for the seller, and another for the buyer. Sherman submitted settlement statements based upon only the buyer's set to the lender. Once the lender approved the loan to the buyer, the lender wired the purchase money to Titles. Sherman then disbursed the monies to the parties to the transaction, with the discrepancy between the loan amount and the actual purchase amount going to Loewinger. Titles collected its usual fee for each transaction.

**{¶7}** In March 2004, Sherman left her position at Titles. Petti hired Helen Shipley to replace Sherman as the escrow officer. Shipley immediately began to encounter problems with Loewinger's deals. When she went to Petti, she did not believe he fully understood her complaint, but he told her she should follow Loewinger's instructions.

{¶8} In May 2004, Petti's office manager Don Burrie received notice from an outside source of a problem with the title with respect to one of Loewinger's deals. When Burrie reviewed the file, he noticed the "double" settlement statements. He took the file to Petti.

{¶9} Petti and Burrie together confronted Loewinger at that time, and Petti informed Loewinger that he could not create two sets of documents in the future. Loewinger subsequently took his new business to the title company that Sherman had created after she left Titles.

{¶10} However, at the time of Petti's confrontation with Loewinger, Titles still had a few of Loewinger's deals in process with lender People's Choice. People's Choice was not informed of any problems with these pending loan applications. The evidence showed that Titles completed three Loewinger/People's Choice transactions; the last property sold on August 1, 2004.

{¶11} After considering the evidence, the trial court found Petti guilty of the following charges alleged in the indictment:

Count 1 - engaging in a pattern of corrupt activity during the years 2003 through 2004.

Count 2 - conspiracy to commit the crime of engaging in a pattern of corrupt activity.

Count 3 - money laundering.

Count 74 - theft by deception.

Counts 82, 86, and 90 - securing writings by deception.

Counts 83, 87, and 91 - receiving stolen property.

Counts 84, 88, and 92 - tampering with records.

{¶12} The trial court ultimately sentenced Petti to serve a total of three years of community control sanctions. Petti appeals from his convictions with two assignments of error, which will be addressed in reverse order.

**"A. [sic] The state failed to prove the scienter requirement of 'knowingly' or 'purposefully' under R.C. 2901.22 for the following crimes: Engaging in a pattern of corrupt activity, Money laundering, Theft, Receiving stolen property, Securing writings by deception and Tampering with records."**

**"II. [sic] Mr. Petti's conviction [sic] was against the sufficiency of the evidence."**

{¶13} Petti argues that his convictions are not supported by either sufficient evidence or by the manifest weight of the evidence. He asserts in his second assignment of error that the state's evidence failed to prove he had the requisite intent.

{¶14} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v.*

*Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  "In essence, sufficiency is a test of adequacy."  *Id.* at 386.

{¶15} Petti was charged with violating R.C. 2923.32(A)(1), which states that "[n]o person employed by, or associated with, any enterprise *shall* conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity * * *."  The Ohio Supreme Court held in *State v. Schlosser*, 79 Ohio St.3d 329, 681 N.E.2d 911 (1997), that this statute "plainly indicates a purpose to impose strict liability." Because Loewinger testified he  hired Petti's company to process his "double" purchase agreements, and Loewinger admitted he was engaged in an illegal enterprise with respect to those purchase agreements, the elements of this crime were established.

{¶16} Petti also was charged with violating several statutes that require knowledge.  The trial court denied Petti's motion for acquittal, in pertinent part, with respect to the following charges.

{¶17} R.C. 1315.55, Money laundering, forbids a person from conducting a transaction "knowing that the property involved in the transaction is the proceeds of some form of unlawful activity with the purpose of * * * furthering the commission of the corrupt activity."

{¶18} R.C. 2913.02(A) Theft, states that "[n]o person, with purpose to deprive the owner of property * * * , shall knowingly obtain or exert control over the property * * * (3) [b]y deception."

{¶19} R.C. 2913.43(A), Securing writings by deception, states that "[n]o person, by deception, shall cause another to execute any writing that disposes of * * * property, or by which a pecuniary obligation is incurred."

{¶20} R.C. 2913.51(A), Receiving stolen property, states that "[n]o person shall receive, retain or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."

{¶21} Finally, R.C. 2913.42(A), Tampering with records, states that "[n]o person, knowing that the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall * * * (1) Falsify * * * any writing * * * (2) Utter any writing * * * knowing it to have been tampered with * * * ."

{¶22} In this case, Shipley testified that, soon after she started working for Petti, she informed him of irregularities with respect to Loewinger's "deals." She stated she explained the problem more specifically to Titles' office manager, Donald Burrie, after he was hired. Shipley testified that Burrie assured her he would speak to Petti about the "double" purchase agreements.

{¶23} According to Richard Pawlus, who worked with Loewinger, Petti came with Burrie to Loewinger's place of business for a meeting. Afterward, Petti told Pawlus that he and Loewinger had come to an agreement about their future dealings. Loewinger admitted during his testimony that he had a face-to-face meeting with Petti to discuss his "deals."

**{¶24}** The state provided documentary evidence that showed Titles continued to process three more of Loewinger's "double" purchase agreement "deals" with lender People's Choice. The representative who testified for People's Choice stated the lender would neither have approved these Loewinger deals nor sent the purchase money to close them if the "double" settlement statements Titles prepared had been brought to its attention. Titles collected its fee for completing the title work involved in these transactions.

**{¶25}** When Burrie testified for the defense, he acknowledged that it was Petti's full awareness of Loewinger's scheme that led to the May 2004 meeting. Burrie further acknowledged that, after that meeting, Titles continued to process those settlement statements it had prepared for Loewinger deals that were previously submitted to lenders.

**{¶26}** Based upon the evidence in the record, the trial court properly denied Petti's motion for acquittal with respect to the foregoing charges. *State v. Stevens*, 8th Dist. No. 93189, 2010-Ohio-2600; *State v. Wells*, 8th Dist. No. 92130, 2009-Ohio-4712. Petti's second assignment of error is overruled.

**{¶27}** Petti argues in his first assignment of error that his convictions are not supported by the manifest weight of the evidence. He contends that a review of the evidence in its entirety demonstrates he remained ignorant of Loewinger's scheme until the FBI mounted its investigation in 2006.

**{¶28}** In *Wells*, at ¶ 13-15, this court set forth the analysis to be applied to Petti's argument as follows:

In evaluating a challenge to the verdict based on the manifest weight of the evidence, a court sits as the thirteenth juror and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury that has "lost its way." *State v. Thompkins*, [78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541].
* * *

In *State v. Bruno*, Cuyahoga App. No. 84883, 2005-Ohio-1862, we stated that the court must be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. Moreover, in reviewing a claim that a conviction is against the manifest weight of the evidence, the conviction cannot be reversed unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Garrow* (1995), 103 Ohio App.3d 368, 370-371, 659 N.E.2d 814.

{¶29} This case does not present the exceptional one in which the record reflects the trier of fact lost its way in convicting Petti. Rather, based upon its findings, the trial court obviously carefully considered the evidence.

{¶30} While the evidence was unclear as to whether Petti understood the scheme was in existence prior to May 2004, both the state's witnesses and Burrie testified that, at the point when the face-to-face meeting with Loewinger took place, Petti knew that most of Loewinger's deals had "double" settlement statements. Titles nevertheless finished processing three of those deals with People's Choice prior to ceasing to do business with Loewinger. In sifting through the complex documents and assessing the testimony, the trial court found Petti guilty as to the charges relating only to those transactions.

{¶31} Under the circumstances presented in this case, this court cannot substitute its judgment for the trial court's on the credibility of the evidence. *Stevens*, 8th Dist. No. 93189, 2010-Ohio-2600; *State v. Holman*, 8th Dist. Nos. 93869 and 93870,

2010-Ohio-4886; *State v. Huff*, 8th Dist. No. 92427, 2009-Ohio-5368.   Accordingly,

Petti's first assignment of error also is overruled.

{¶32} Petti's convictions are affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common

pleas court to carry this judgment into execution.   The defendant's convictions having

been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court

for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to

Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, JUDGE

MELODY J. STEWART, J., and
MARY J. BOYLE, J., CONCUR